RECEIVED

SEP 09 2025

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 3:25-cr-063 |
| v. | INDICTMENT |
| APRIL LEIANNE JOHNSON, | T. 18 U.S.C. § 982(b)(1) |
| Defendant. | T. 18 U.S.C. § 1343 |
| | T. 21 U.S.C. § 853(p) |
| | T. 28 U.S.C. § 2461(c) |

**THE GRAND JURY CHARGES:**

### Introduction

At all times material to this indictment:

1. The defendant, APRIL LEIANNE JOHNSON (APRIL), was a resident of Montrose, Iowa, in the Southern District of Iowa.

2. In 2016, APRIL was actively selling insurance as a registered insurance agent (NPN 13562946) for Southern Iowa Insurance Services (SIIS), which wrote policies for Lee County Mutual (LCM). In 2016, APRIL became the secretary-treasurer on the board for LCM. She remained in such position until 2021.

3. LCM is a farm mutual. A farm mutual is managed by an elected board of directors. A farm mutual is owned by its policyholders and designed to provide insurance coverage primarily for farmers and farm property. Multiple insurance agencies, including SIIS, wrote business (insurance policies) for LCM. The policyholders paid premiums for their policies.

1

4. APRIL and her spouse, Person 1, bought the insurance agency, SIIS, in 2019. SIIS wrote approximately 75% of the business for LCM.

5. Peoples Mutual (Peoples) is a farm mutual insurance company (farm mutual). Peoples merged with LCM for financial reasons. The Board approved the merger in September 2023 and the merger went into effect on January 1, 2024.

6. Grinnell Mutual (Grinnell) provides reinsurance for farm mutuals. The State of Iowa requires mutual insurance companies to have reinsurance. Reinsurance is insurance for insurance companies. Grinnell provides liability coverage and reimburses farm mutuals for claims payments that exceed an annual aggregate dollar threshold. Farm mutuals can utilize Grinnell resources, such as claims and adjusting services, for a monthly fee.

7. Grinnell is the reinsurer for Peoples and for LCM. LCM utilized the claims and adjusting services of Grinnell except in 2023 when LCM also used Team One for claims and adjusting services. LCM was required to provide monthly reports of claims reserves and claims paid to Grinnell.

8. LCM uses a Navigator/Claims Management System (CMS). CMS is an internet-based system, and the servers are in the state of Oregon. CMS has been used to generate claims for LCM since April 24, 2019. LCM used a processing system called APPS, which was used to print the check for the insured for the loss amount. The APPS program uses servers local to the physical offices of SIIS and LCM. The internet-based CMS, with servers in Oregon, interacts—that is, sends or receives

information via the internet—with the APPS program, with servers in the Southern District of Iowa.

9. When a client takes out an insurance policy, the policy information is entered into the APPS system by the mutual staff. APPS (server-based system) is ordinarily not accessible by insurance agents, like APRIL. However, because APRIL was LCM's treasurer (employee), and LCM shared offices with SIIS (the insurance company APRIL owned), APRIL had access to APPS.

10. APRIL also had access to CMS to write checks and enter information. Each individual agent or employee who had access to CMS had a unique username and password to get logged in. All the fraudulent claims alleged as part of the scheme herein were made and entered under her login credentials as the LCM treasurer. APRIL retained her login credentials to the CMS system even after she was no longer treasurer.

11. If a client has a claim, the agent finds the corresponding policy in CMS and starts a claim by manually typing information about the claim into CMS, including information received from the insured about the incident. LCM staff members accept the claim in CMS, and CMS generates a unique claim number. If needed, the LCM staff assigns an adjuster to complete an estimate.

12. Once the estimate is complete, LCM staff input the adjuster's information about the claim, including the estimate, into CMS. LCM staff may, for example, take the estimate from the adjuster and subtract the policy's deductible to generate the amount to pay the insured. In inputting the information into the

electronic system, CMS allows LCM staff to use drop down boxes or to make manual entries, typing the preferred information into the boxes. Some of these entries are later used to populate the check with information, like the name of the person the check is issued to.

13. CMS then communicates with APPS to generate the check issued to the insured. APPS populates all sections of the check, including the payee, address, and amount, with information it receives from CMS. After the check is generated by APPS with the information from CMS, LCM staff cannot make changes to the check. If any changes are needed to the check, LCM staff must make the necessary changes in CMS, which then flow back into APPS, updating the check. The check is printed and requires a physical signature. The check is mailed to or picked up by the policyholder, and payment is drawn on LCM's bank account.

14. Peoples took over LCM's APPS account in December 2023. As of December 21, 2023, APRIL had read-only access to the LCM APPS account, meaning she could view policy information that had been entered into APPS but could not input, edit, or manipulate it. The official merger took place in January 2024.

15. APRIL and Person 1 had a joint personal banking account with MidWestOne Bank (account ending in 4561) that was opened in February 2018.

### The Scheme and Artifice to Defraud

16. From at least in or about 2016, and continuing through at least on or about December 2023, in the Southern District of Iowa and elsewhere, APRIL, defendant herein, knowingly devised, intended to devise, and participated in a

scheme and artifice to defraud unsuspecting premium paying customers of LCM, LCM, and other unknowing victims, to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

17. It was part of the scheme that APRIL logged onto the CMS system and created false claims under legitimate policyholders' accounts. APRIL falsely claimed the insured policyholder called LCM to report damage to property and APRIL entered false and fabricated information about the nature of the incident and the damage caused to policyholder's property. APRIL entered false information into the required fields in CMS. APRIL did not send the false claims through the adjustor, although in some instances APRIL falsely entered that an adjuster had been assigned to a claim. On most fraudulent claims, APRIL manually entered either her name or Person 1's name as the person to whom the checks should be issued. Once APRIL entered the false information about the claim into CMS, including the payee, APRIL caused internet-based CMS to communicate with APPS to generate a payment check for the claim. These checks were generally falsely issued to APRIL and/or Person 1.

18. It was further part of the scheme that APRIL falsely represented to LCM that these were legitimate claims by policyholders. In fact, APRIL made false claims on behalf of existing policyholders, who were not aware of these claims and received no money for the false claims.

19. The purpose and object of the scheme was to obtain money to use for her personal benefit and purposes. It was further part of the scheme that APRIL received

these fraudulently issued checks, endorsed them, and deposited them into her personal bank account at MidWestOne ending in 4561.

20. The data and information necessary to complete the claim and issue a check from LCM under a policyholder's account written to APRIL and/or Person 1, required wire communication routed from the Southern District of Iowa through the claims management system outside of the State of Iowa.

21. In total, APRIL issued over $600,000 worth of fraudulent checks to herself and/or Person 1.

**THE GRAND JURY CHARGES:**

## COUNTS 1 – 15
### (Wire Fraud)

22. Paragraphs 1 through 21 are realleged and incorporated as if set forth fully herein.

23. On or about the dates listed in the below table, in the Southern District of Iowa and elsewhere, the defendant, APRIL LEIANNE JOHNSON, for the purpose of executing the scheme and artifice described above, and attempting to do so, did transmit and caused to be transmitted, by means of wire communications in interstate commerce, certain writings, signs, signals, and sounds, including, but not limited to, the interstate wires described below for each count:

| Count | Approximate Date of Wire | Description |
|---|---|---|
| 1 | December 4, 2020 | Data and information necessary to complete the claim and issue a check for $17,244.76 from LCM under policy holder T.S. written to Person 1 and April Johnson, which wire communication was routed from the Southern District of Iowa through the claims management system outside of the State of Iowa. |
| 2 | January 8, 2021 | Data and information necessary to complete the claim and issue a check for $26,429.32 from LCM under policy holders O.J. and A.J. written to Person 1 and April L. Johnson, which wire communication was routed from the Southern District of Iowa through the claims management system outside of the State of Iowa. |
| 3 | March 1, 2021 | Data and information necessary to complete the claim and issue a check for $14,624.42 from LCM under policy holders O.J. and A.J. written to "Jeremiah Johnson," which wire communication was routed from the Southern District of Iowa through the claims management system outside of the State of Iowa. |
| 4 | April 1, 2021 | Data and information necessary to complete the claim and issue a check for $19,776.42 from LCM under policy holder W.S. to Person 1, which wire communication was routed from the Southern District of Iowa through the claims management system outside of the State of Iowa. |
| 5 | April 26, 2021 | Data and information necessary to complete the claim and issue a check for $6,946.51 from LCM under policy holder K.M. written to Person 1, which wire communication was routed from the Southern District of Iowa through the claims management system outside of the State of Iowa. |
| 6 | June 1, 2021 | Data and information necessary to complete the claim and issue a check for $2,400.00 from LCM under policy holder T.S. written to Person 1 and April L. Johnson, which wire communication was routed from the Southern District of Iowa through the claims management system outside of the State of Iowa. |
| 7 | June 16, 2021 | Data and information necessary to complete the claim and issue a check for $9,200.00 from LCM under policy holder T.S. written to Person 1 and April L. Johnson, which wire communication was routed from the Southern District of Iowa through the claims management system outside of the State of Iowa. |

| Count | Approximate Date of Wire | Description |
|---|---|---|
| 8 | July 7, 2021 | Data and information necessary to complete the claim and issue a check for $3,576.94 from LCM under policy holder T.S. written to Person 1 and April L. Johnson, which wire communication was routed from the Southern District of Iowa through the claims management system outside of the State of Iowa. |
| 9 | July 9, 2021 | Data and information necessary to complete the claim and issue a check for $6420.00 from LCM under policy holder G.J. written to G.J., which wire communication was routed from the Southern District of Iowa through the claims management system outside of the State of Iowa. |
| 10 | September 24, 2021 | Data and information necessary to complete the claim and issue a check for $5,762.94 from LCM under policy holder G.J. written to G.J. and Person 1, which wire communication was routed from the Southern District of Iowa through the claims management system outside of the State of Iowa. |
| 11 | September 29, 2021 | Data and information necessary to complete the claim and issue a check for $6,000.00 from LCM under policy holder T.S. written to SIIS, which wire communication was routed from the Southern District of Iowa through the claims management system outside of the State of Iowa. |
| 12 | November 3, 2021 | Data and information necessary to complete the claim and issue a check for $7,169.00 from LCM under policy holder T.S. written to Person 1 and April L. Johnson, which wire communication was routed from the Southern District of Iowa through the claims management system outside of the State of Iowa. |
| 13 | December 6, 2021 | Data and information necessary to complete the claim and issue a check for $2,765.72 from LCM under policy holder T.S. written to Person 1 and April Johnson, which wire communication was routed from the Southern District of Iowa through the claims management system outside of the State of Iowa. |
| 14 | December 29, 2021 | Data and information necessary to complete the claim and issue a check for $1,965.08 from LCM under policy holder T.S. written to Person 1 and April Johnson, which wire communication was routed from the Southern District of Iowa through the claims management system outside of the State of Iowa. |

| Count | Approximate Date of Wire | Description |
|---|---|---|
| 15 | February 15, 2022 | Data and information necessary to complete the claim and issue a check for $36,663.48 from LCM under policy holder G.J. written to Person 1, which wire communication was routed from the Southern District of Iowa through the claims management system outside of the State of Iowa. |

Each of the above counts is a violation of Title 18, United States Code, Section 1343.

**THE GRAND JURY FINDS:**

### NOTICE OF FORFEITURE

Upon conviction of the offenses in violation of 18 U.S.C. § 1343, as set out in Counts 1 through 15 of this Indictment, the defendant, APRIL LEIANNE JOHNSON, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(D) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to said offenses.

The property to be forfeited includes, but is not limited to:

A.  All currency, funds, and other monetary instruments; or

B.  A sum of money equal to the total amount of gross proceeds obtained as a result of the above offenses. Such amount to be at least $630,295.05.

If any of the property described above, as a result of any act or omission of any defendant cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

**A TRUE BILL.**

_____
FOREPERSON

Richard D. Westphal
United States Attorney

By: _____
Melisa K. Zaehringer
Assistant United States Attorney